STATE OF NEBRASKA, APPELLEE, V.
JESSE E. NARCISSE, APPELLANT.

646 N.W.2d 583

Filed June 21, 2002.   No. S-01-520.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Following an evidentiary hearing, the district court denied Jesse E. Narcisse's motion for postconviction relief. Narcisse appeals.

## SCOPE OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002).

## FACTS

In 1987, Narcisse was charged with one count of first degree sexual assault and one count of first degree false imprisonment. He was also charged with two counts of being a habitual criminal. Narcisse was convicted on all counts on February 26, 1988. His convictions were affirmed in *State v. Narcisse*, 231 Neb. 805, 438 N.W.2d 743 (1989).

In 1997, the district court denied Narcisse's request for postconviction relief without an evidentiary hearing. The Nebraska Court of Appeals affirmed, and we granted Narcisse's petition for further review. We concluded that Narcisse's motion for postconviction relief contained sufficient facts to entitle him to an evidentiary hearing. Therefore, we reversed the decision of the Court of Appeals and remanded the cause with directions to remand the cause to the district court for an evidentiary hearing. See *State v. Narcisse*, 260 Neb. 55, 615 N.W.2d 110 (2000).

This matter is now before us on Narcisse's appeal from the denial of his motion for postconviction relief following an evidentiary hearing in the district court. At the evidentiary hearing, the issue presented was whether Narcisse's counsel had actively represented clients with conflicting interests during Narcisse's trial and subsequent appeal and, if so, whether the conflict of interest adversely affected the adequacy of Narcisse's counsel's performance.

The alleged conflict of interest related to the murder of Denise Stawkowski, who was found shot to death in Lancaster County on February 19, 1988. Herman Buckman and Goldie Fisher were arrested in connection with the death. On February 21, Miles Johnston, Jr., who represented Narcisse, was appointed to represent Buckman.

While awaiting trial, Narcisse was housed in the Lancaster County jail and worked as a trustee in the kitchen. There, he came into contact with Fisher, who had previously been Narcisse's girl friend. Allegedly, prior to Narcisse's trial, Fisher told him details about Stawkowski's murder. Fisher and Narcisse gave conflicting recorded statements to Det. Robert Marker, Jr., of the Lancaster County Sheriff's Department. Narcisse reported that Fisher said Stawkowski was shot by a third party, and not by Buckman. Narcisse knew Buckman from previous incarcerations.

On April 12, 1988, more than 1 month after Narcisse was convicted, Buckman was charged with murder. Attached to the information was a list of potential witnesses, which included Narcisse. Johnston then spoke with a deputy county attorney, who said that the State did not plan to call Narcisse as a witness because the information he had given was not believed to be accurate. Narcisse was not deposed and did not testify at Buckman's trial.

Narcisse was convicted on February 26, 1988, after a 4-day trial. Johnston conferred with Buckman four times between February 21 and 26. Before Narcisse was sentenced, Johnston met with Buckman an additional 14 times.

The district court found that although Johnston was appointed to represent Buckman and met with him on February 21, 1988, the day before commencement of Narcisse's trial, Johnston did not become aware of the possible involvement of Narcisse in Buckman's trial until after Narcisse had been convicted. The court found no evidence that Johnston's representation of Buckman adversely affected Johnston's representation of Narcisse. The evidence established that the State did not intend to use Narcisse as a witness in the Buckman trial and that there was no conflict between the two cases and their defendants.

The district court noted that Johnston had neglected to communicate with Narcisse after his sentencing, but there was no

 

evidence to support a conclusion that there was any relationship between that neglect and Johnston's representation of Buckman. The court denied Narcisse's request for postconviction relief.

## ASSIGNMENT OF ERROR

Narcisse assigns as error that the district court erred in denying his motion for postconviction relief.

## ANALYSIS

In support of his assignment of error, Narcisse claims he met the burden to demonstrate a conflict of interest which adversely affected counsel's performance. Narcisse alleges that the evidence established Johnston's deficient performance and that Johnston failed to convey a plea offer to him because of a conflict of interest that resulted in prejudice to Narcisse.

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002). When a defendant raises no objection to a conflict of interest at trial, he or she must demonstrate "(1) that his or her lawyer actively represented conflicting interests and (2) that the actual conflict of interest adversely affected the lawyer's performance." See *State v. Fletcher*, 253 Neb. 1029, 1032, 573 N.W.2d 752, 755 (1998). A conflict of interest must be shown to have resulted in conduct on the part of counsel which was detrimental to the defense. See *id.*

At the evidentiary hearing, Johnston testified that he first met with Buckman on February 21, 1988. He was appointed to represent Buckman 3 days before the start of Narcisse's jury trial. Johnston did not discuss his representation of Narcisse with Buckman because Johnston had no idea Narcisse and Buckman knew each other or had any connection with each other.

Johnston said he first became aware that Narcisse was listed as a witness in the Buckman case when the information was filed against Buckman on April 12, 1988. His motion for fees indicated that he researched attorney-client privilege on April 4. He was told that the State did not believe Narcisse's information was accurate and that it did not intend to use the information or call Narcisse as a witness. Narcisse's statement to authorities

did not agree with the timeline that the authorities had already determined was factual.

Johnston testified that he believed a plea offer was made in Narcisse's case a few days prior to trial. He discussed the offer with Narcisse before the trial, and Narcisse declined to accept it. He encouraged Narcisse to accept the offer because Narcisse's only defense was that the sexual contact was voluntary. He believed that he encouraged Narcisse to testify during the trial, but Narcisse refused. Narcisse was not called as a witness at Buckman's trial, and his testimony was never offered. Johnston said he never discussed Narcisse's willingness to testify with prosecutors in the Buckman case.

Narcisse testified at the evidentiary hearing that he did not know about the plea offer until after the trial and sentencing and that he did not know the specifics of the offer. He said that when he asked Johnston his reasons for waiting until after sentencing to discuss the offer, Johnston said: " 'This will teach you to testify against my client.' " Johnston testified that he did not know the origin of that quote. Narcisse also claimed that he wanted to testify during trial but that Johnston advised against it. Narcisse claimed that if he had known Johnston was representing Buckman, he would have asked for another attorney because of the conflict of interest.

Detective Marker testified that as one of the lead detectives investigating the homicide of Stawkowski, he interviewed Narcisse on February 22, 1988. Detective Marker said the information from Narcisse did not match other information obtained during the investigation, including information obtained directly from Fisher.

■ On appeal from a proceeding for postconviction relief, the trial court's findings of fact will be upheld unless such findings are clearly erroneous. *State v. Williams*, 253 Neb. 111, 568 N.W.2d 246 (1997), *cert. denied* 522 U.S. 992, 118 S. Ct. 555, 139 L. Ed. 2d 397. The district court found that the statements given to Detective Marker by Fisher and Narcisse corroborated Johnston's testimony that the State did not call Narcisse as a witness in the Buckman case due to inconsistencies in Narcisse's statement. The evidence also supported Johnston's statement concerning the dates and times on which he met with Buckman.

The court found that Narcisse was not deposed and did not testify at Buckman's trial. The court found that it was not until early April 1988, after Narcisse had been convicted, that Johnston became aware of the potential of Narcisse's being called to testify in the Buckman case.

The district court heard Narcisse and Johnston testify concerning the allegation that Johnston did not inform Narcisse of the plea offer until after he had been convicted. It found no support for Narcisse's claim that the failure to notify him of the plea offer was in retaliation for Narcisse's testifying against Buckman. The fee application submitted by Johnston showed that he had talked to Narcisse about the plea on February 12, 1988, which was prior to trial.

The district court found no evidence that Narcisse's case was affected, adversely or otherwise, by Johnston's representation of Buckman and that there was no conflict between the two cases and their defendants. Johnston apparently did not communicate with Narcisse after his sentencing, but the district court found no evidence to suggest that the failure was related to Johnston's representation of Buckman.

We find no error in the findings of fact made by the district court. Narcisse has failed to establish a basis for postconviction relief. He has not met his burden to show that any conflict of interest existed in Johnston's representation of Buckman and Narcisse or that the representation of the two defendants adversely affected Narcisse's case. The findings of the district court are not clearly erroneous, and the court correctly denied postconviction relief.

## CONCLUSION

Finding no error in its denial of postconviction relief, we affirm the judgment of the district court.

AFFIRMED.